## FERGUSON v. HASKELL NAT. BANK et al.

### No. 1890.

Court of Civil Appeals of Texas. Eastland.

April 7, 1939.

Coombes & Andrews and E. V. Hardwick all of Stamford, Tom Davis, F. M.

Robertson, and T. R. Odell, all of Haskell, W. R. Ely, of Abilene, Hamilton, Lipscomb & Wood, of Dallas, B. C. Chapman, of Haskell, J. L. Backstrom, of Dallas, and O. D. McReynolds, of Sherman, for defendant-in-error.

FUNDERBURK, Justice.

This is a suit brought by A. M. Ferguson against Haskell National Bank, the Haskell National Bank, O. E. Patterson, A. C. Pierson, C. M. Connor and Joe Lee Ferguson. Plaintiff's Fourth Amended Original Petition (trial pleading) comprises 32 pages of the transcript. The nature of the suit with reference to its purpose as described in the brief of plaintiff-in-error (who will be referred to as plaintiff, or by name) was "to recover upon (a) an exchange draft issued by" the Haskell National Bank to plaintiff "for Eighteen Thousand Five Hundred ($18,500) Dollars, on which it stopped payment, and (b) on the obligation of said" bank "to permit plaintiff-in-error to withdraw from said bank such sum and not to stop payment on its paper issued to" plaintiff "in withdrawing such funds, which obligation had been assumed by * * * bank at the time a. larger deposit was made in said * * * bank by A. M. Ferguson as temporary administrator of the estate of Kate F. Morton, deceased." As described in the brief of defendants-in-error, Haskell National Bank, the Haskell National Bank, O. E. Patterson and A. C. Pierson (hereinafter referred to as defendants, or by name), such purpose was "to recover upon a draft issued by said bank [The Haskell National Bank] to A. M. Ferguson in exchange for a check drawn by A. M. Ferguson as temporary administrator of the estate of Kate F. Morton, deceased, payable to the said A. M. Ferguson, upon which draft the defendant bank had stopped payment. The plaintiff alleged a conspiracy between the defendants against him and sought recovery of the $18,500 with 11½ per cent interest, and numerous items of special damages." O. E. Patterson, A. C. Pierson, C. M. Connor and Joe Lee Ferguson were made parties defendant and charged with a conspiracy to cause the bank to stop payment on such exchange draft and prevent the bank from living up to its alleged obligation to permit such withdrawal of funds. The bank, by cross-action, tendered and paid into the registry of the court $19,856.46 with prayer that the court adjudicate its ownership by the several parties to the suit to the end that the bank be discharged from further liability with reference to said deposit.

Claimants of interests in said fund of $19,856.46 as an asset of the estate of Kate F. Morton, deceased, intervened as follows: W. L. Scott claimed $376.40; W. A. Thomas, Collector of Internal Revenue, claimed $4,051.57; C. T. Freeman and O. D. McReynolds claimed $1,500; Mrs. Jackie Kindel Oglesby claimed $5,140.61 (voluntarily reduced to $3,500); and T. R. Odell claimed $270.

In addition to the above, R. A. Chapman, Jr., claimed by assignment all of said fund to which A. M. Ferguson individually would be entitled, and Haskell National Bank claimed, by assignment, $1,200 out of the amount of said deposit to which said A. M. Ferguson would be entitled.

The court peremptorily instructed a verdict against the plaintiff and in favor of the defendants. As to the fund of $19,856.46, the interveners and other claimants of interests therein, other than the plaintiff, waived trial by jury as to all. issues not foreclosed by the instructed verdict against the plaintiff, and requested the court to adjudicate, as between them, their several claims to an interest in said fund, and to direct payment accordingly, which was done.

The defendant Joe Lee Ferguson, among other things, interposed a plea setting up a contention to the effect that the rights of the several parties in said deposit had been fixed by an award of a board of arbitrators which had finally become a judgment binding upon the plaintiff.

On June 26, 1933, A. M. Ferguson, claiming to be temporary administrator of the estate of Kate F. Morton, deceased, deposited in the Haskell National Bank the sum of $34,624.57, belonging to said estate, the deposit being to the credit of said A. M. Ferguson as such temporary administrator. At the same time, A. M. Ferguson drew a check against said deposit in the sum of $18,500, signed in the capacity of temporary administrator, payable to himself individually. In exchange for said check the bank delivered him an exchange draft on a Fort Worth bank in the same amount likewise payable to plaintiff. As a part of the same transaction, it was agreed that out of the remainder of the deposit, the bank was to be paid $1,200 due it by said A. M. Ferguson, and being his personal debt. On the evening of the same

day, before the exchange draft had been negotiated or paid, said issuing bank, by proper notice, ordered payment stopped. The said fund of $19,856.46 paid into court included the $18,500 of the total deposit, which, had the check for that amount been cashed, or the exchange given in lieu thereof paid, would have passed to the said A. M. Ferguson (or his assigns) personally. An essential basis of plaintiff's claim for damages asserted in this suit was the fact alleged by him to the effect that the bank in honoring plaintiff's check for $18,500 knew that the proceeds were to be appropriated by said A. M. Ferguson for his personal uses.

█ The record discloses that on June 26, 1933, the date of the transaction in question, a comprehensive arbitration proceeding to which A. M. Ferguson and Joe Lee Ferguson were parties was pending; and that among the claims of A. M. Ferguson against the said estate of Kate F. Morton, deceased, there was included one for reimbursement of individual funds claimed to have been advanced to pay expenses of the estate in administration, and another for compensation for his services as representative of the estate; that a tentative award of $10,000 on one of said claims, made about June 24, 1936, was, before the final award, canceled and disallowed; that the final award made subsequent to June 26, 1933 became a judgment binding upon the said A. M. Ferguson. See Ferguson v. Ferguson, Tex.Civ.App., 93 S.W.2d 513. The Haskell National Bank knew of the pendency of said arbitration proceeding and was charged with knowledge that A. M. Ferguson's right to appropriate to his personal uses the funds of the estate was dependent upon a final award of the board of arbitrators.

█ Under the foregoing facts, in our opinion, A. M. Ferguson could have no cause of action against said bank based upon its act in stopping payment upon said exchange draft. The bank knowing of A. M. Ferguson's purpose and intention to appropriate the proceeds of the check to his individual uses, and of his offer to the bank, to pay his personal debt to it out of the balance of the deposit belonging to the estate, would have been liable to the estate, if it were subsequently determined that A. M. Ferguson was not entitled to $18,500 personally out of said deposit. The effect of the award's becoming finally a judgment of the proper court was to determine that A. M. Ferguson was not entitled to $18,500 out of said deposit as a reimbursement of personal funds advanced, or as compensation for services to the estate.

The bank, by its action in repudiating the exchange draft with the effect of thereby leaving the deposit intact, merely corrected its mistake in honoring the check in the first place. No rights of innocent third parties having attached, the bank we think had the undoubted right to correct such mistake, and it is believed to be immaterial upon what information the conclusion was reached that the mistake had been made.

██ In United States Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Tex. 379, 137 S.W. 648, 653, 138 S.W. 383, 37 L.R.A.,N.S., 409, Ann.Cas.1914B, 667, it was said that "if the bank has notice or knowledge that a breach of the trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable." Wichita Royalty Co. v. City Nat. Bank, 127 Tex. 158, 89 S.W.2d 394, 93 S.W.2d 143, which quoted approvingly the above, is regarded as authority for the conclusion that under the circumstances shown by the allegations of plaintiff's petition in connection with the undisputed evidence the bank would have been liable to the estate of Kate F. Morton, deceased, had it paid the check of A. M. Ferguson in question. The validity of this conclusion is not affected, we think, by the decision in Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 106 A.L.R. 821, which was expressly distinguished from the decision in Wichita Royalty Co. v. City National Bank, supra, and the latter adhered to. The general principle of that distinction seems to be that a bank in honoring checks upon a trust fund drawn by the depositor trustee is not charged with knowledge of a purpose of the trustee to misappropriate the trust fund, even when paid upon checks in which the trustee personally is payee, and under such circumstances there is no liability for a misappropriation of the funds; but where (1) the bank receives some of the proceeds in discharge of a personal debt of the trustee to it, or (2) has actual knowledge (not merely chargeable with knowledge) that the trustee is misappropriating the fund to his individual use, the bank may be liable.

Hence, it is our conclusion that the court did not err in instructing a verdict generally against the plaintiff.

The plaintiff alleged that any personal interest he had in so much of the deposit as was represented by the $18,500 check had, prior to the suit, been assigned to and was the property of R. A. Chapman, Jr. The court found that such interest was $7,300, plus a contingent additional interest dependent upon the amount of court costs which was to be deducted from a balance of the fund, if any, after the payment of the approved claims directed to be paid out of said fund. None of the parties who were decreed interests in the fund appear to contest the correctness of that judgment.

The court, in effect, found that ownership of the several interests in the fund had been determined in the judgment consisting of the award of the arbitrators, and there is no showing in the record that this is not correct.

It is, therefore, our conclusion that the judgment of the court below should in all things be affirmed, and it is accordingly so ordered.

GRISSOM, J., not sitting.